IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN J. RODRIGUEZ,

      Plaintiff,

vs.                                                                                        No. CIV 23-1022 JB/JMR

ALLSTATE  PROPERTY  AND  CASUALTY
INSURANCE COMPANY,

      Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on: (i) Defendant Allstate Property and Casualty Insurance Company's Motion for Partial Summary Judgment (Time-To-Sue), filed April 1, 2025 (Doc. 28)("MSJ"); (ii) Defendant Allstate Property and Casualty Insurance Company's Motion to Bifurcate Plaintiff's Claims for Violations of the New Mexico Unfair Claim Practices Act and Bad Faith Actions, filed April 1, 2025 (Doc. 29)("Motion to Bifurcate"); and (iii) Plaintiff Rodriguez' Motion for Certification of Questions of Law to the New Mexico Supreme Court, filed May 28, 2025 (Doc. 43)("Motion to Certify").  The Court holds a hearing on August 21, 2025.  <u>See</u> Clerk's Minutes at 1, filed August 21, 2025 (Doc. 61).  The primary issues are: (i) whether the time-to-sue provision in the insurance policy issued to Plaintiff John J. Rodriguez by Allstate Insurance time-bars Rodriguez' breach-of-contract claim; (ii) whether the Court should certify Rodriguez' questions of New Mexico State law -- (i) whether an insurer must demonstrate substantial prejudice as a result of the insured's material breach of the insurance policy for the insurer to assert the affirmative defense of a time-to-sue provision in an insurance policy; and (ii) whether the holding from <u>Whelan v. State Farm Mut. Auto Ins. Co.</u>, 2014-NMSC-021, ¶ 3, 329 P.3d 646, 648 ("<u>Whelan</u>"), that a time-to-sue provision which is not triggered by the actual accrual of the cause of

action is unreasonable and unenforceable as a matter of law, applies to a real property insurance policy -- to the Supreme Court of New Mexico; and (iii) whether the Court should bifurcate Rodriguez' breach-of-contract claim from Rodriguez' extra-contractual claims -- unfair insurance claims practices and bad faith.  The Court concludes: (i) the Court certifies Rodriguez' questions of New Mexico State law -- (i) whether an insurer must demonstrate substantial prejudice as a result of the insured's material breach of the insurance policy for the insurer to assert the affirmative defense of a time-to-sue provision in an insurance policy; and (ii) whether the holding from Whelan v. State Farm Mut. Auto Ins. Co., 2014-NMSC-021, ¶ 3, 329 P.3d 646, 648 ("Whelan"), that a time-to-sue provision which is not triggered by the actual accrual of the cause of action is unreasonable and unenforceable as a matter of law, applies to a real property insurance policy -- to the Supreme Court of New Mexico; (ii) the analysis of whether Rodriguez' breach of contract claim is time-barred by the time-to-sue provision in the insurance policy issued to Rodriguez by Allstate Insurance is dependent on the Supreme Court of New Mexico's interpretation of the questions of law that the Court certifies to the Supreme Court of New Mexico, and accordingly the Court dismisses without prejudice the MSJ as not ripe pending certification; and (iii) the Court declines to bifurcate Rodriguez' breach-of-contract claim from Rodriguez' unfair insurance claims practices and bad faith claims.  Accordingly, the Court dismisses without prejudice Allstate Insurance's MSJ, grants Rodriguez' Motion to Certify, and denies Allstate Insurance's Motion to Bifurcate.

## FACTUAL BACKGROUND

The Court draws the factual background from the parties' assertions of undisputed material fact in their summary judgment motion papers.  See MSJ ¶¶ 1-5, at 2-3; Plaintiff's Response in Opposition to Defendant's Motion for Partial Summary Judgment (Time-To-Sue), ¶¶ 1-18, at 2-6, filed May 21, 2025 (Doc.42)("MSJ Response").  In support of the MSJ, Allstate Insurance submits

the following evidence: Rodriguez' Allstate Insurance Policy, filed April 1, 2025 (Doc. 28-1).  In opposition to the MSJ, Rodriguez submits the following evidence: (i) Storm Impacts Report, filed May 21, 2025 (Doc. 42-1); (ii) Allstate Insurance Initial Claim Estimate (dated January 15, 2019), filed May 21, 2025 (Doc. 42-2); (iii) Coverage Letter from Allstate Insurance to Rodriguez (dated January 15, 2019), filed May 21, 2025 (Doc. 42-3); (iv) Allstar Public Adjusters Photo Report (dated March 19, 2022), filed May 21, 2025 (Doc. 42-4); (v) Allstate Insurance's First Revised Claim Estimate (dated June 15, 2022), filed May 21, 2025 (Doc. 42-5); (vi) Allstate Insurance's Second Revised Claim Estimate (dated August 13, 2022), filed May 21, 2025 (Doc 42-6); (vii) Allstate Insurance's Third Revised Claim Estimate (dated March 29, 2023), filed May 21, 2025 (Doc 42-7); (viii) Email from Allstar Public Adjusters to Rodriguez Re: Refrigerated Air Inspection (dated July 20, 2022), filed May 21, 2025 (Doc. 42-8); (ix) HVACi First Assessment Report (dated August 12, 2022), filed May 21, 2025 (Doc 42-9); (x) HVACi Second Assessment Report (dated February 20, 2023), filed May 21, 2025 (Doc 42-10); (xi) Allstate Public Adjusters Estimate (dated November 11, 2024), filed May 21, 2025 (Doc 42-11); (xii) Bulletin 2022-010 from the State of New Mexico Office of Superintendent of Insurance Re: Payment of Residential Property Loss Claims Following the Wildfires (dated June 8, 2022), filed May 21, 2025 (Doc. 42-12); (xiii) Bulletin 2024-003 from the State of New Mexico Office of Superintendent of Insurance Re: Requirement to Provide Replacement Value of Residential Property (dated February 20, 2024), filed May 21, 2025 (Doc. 42-13). Most of the facts in this case are undisputed.  The Court states the undisputed material facts in the text.  The Court specifically discusses facts that are purportedly disputed or actually disputed in the footnotes.[1]

---

[1] The Court notes that Allstate Insurance does not deny many of the facts, and instead chooses not to engage with Rodriguez' statements of the facts.  Accordingly, the Court views those statements as undisputed for its summary judgment analysis and will include them above.  See

Rodriguez purchases Insurance Policy Number 829 726 824 ("Policy") from Allstate Insurance to cover his home located at 3224 Greystone Ct. SE, Rio Rancho, NM 87124 ("Property") from loss because of hail, wind, and other covered perils. See MSJ Response ¶ 1, at 2; Rodriguez' Insurance Policy at 1. On or about July 31, 2018, while the Policy is in effect, the Property sustains damage as the result of a wind and hailstorm that occurs in Rio Rancho, New Mexico.[2] See MSJ ¶ 1, at 2; MSJ Response ¶ 2, at 2. At all relevant times, Rodriguez is insured under the Policy. See MSJ ¶ 4, at 2; MSJ Response ¶ 2, at 2. In or around January, 2019, Rodriguez becomes aware of leaking into his home, and Rodriguez reports this finding to Allstate Insurance. See MSJ Response ¶ 3, at 2-3; Defendant's Reply in Support of Motion for Partial Summary Judgment (Time to Sue), at 3, filed May 30, 2025 (Doc. 49)("MSJ Reply")("Here, however, Plaintiff has stated that he became aware of roof leaks, and reported the claim to Allstate, in January 2019, four and a half years before he filed suit."). Allstate Insurance opens Claim No. 0530805449 ("Claim") in response, and on or about January 15, 2019, Allstate Insurance acknowledges that a covered loss occurred. See MSJ Response ¶ 4, at 3; Allstate Insurance Initial Claim Estimate at 5. Allstate Insurance limits coverage, however, to only $1,304.41 for minor interior leak damages to Rodriguez's home. See MSJ Response ¶ 4, at 3; Allstate Insurance Initial Claim Estimate at 5. Rodriguez maintains that the exterior of his home also sustains damages, including damages to a HVAC unit on the roof, a HVAC unit on the ground, and to the roof system. See MSJ Response ¶

---

D.N.M. LR-Civ 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[2] Rodriguez in a footnote states that Allstate Insurance disputes this date of loss and claims that the loss occurs on August 2, 2018, but Allstate Insurance also acknowledges this date of loss in its statement of facts in its MSJ. See MSJ ¶ 1, at 2 ("The Plaintiff's claims arise from property damage that was allegedly sustained during a weather event in Rio Rancho, New Mexico on July 31, 2018"). The Court accordingly recites July 31, 2018 as the date of loss for its statement of facts.

5, at 3.  Allstate Insurance denies coverage, however, for the roof repairs, because Allstate Insurance claims that this damage is the result of normal wear and tear.  See MSJ Response ¶ 5, at 3; Coverage Letter from Allstate Insurance to Rodriguez, at 1.  Rodriguez relies on this representation from Allstate Insurance until he retains a separate licensed New Mexico public insurance adjuster, All Star Public Adjusters, to investigate the damage to the property.  See MSJ Response ¶ 6, at 3.  On or about March 8, 2022, All Star Public Adjusters conducts an investigation of the Property, and concludes that the scope of damage to the Property that is covered by the Policy is greater than Allstate Insurance acknowledges.  See MSJ Response ¶ 6, at 3.  See generally Allstar Public Adjusters Photo Report.  Thereafter, in or around May 2022, Rodriguez presents this evidence to Allstate Insurance, including, but not limited to, numerous photographs of the significant hail damage to the roof system and the two HVAC units on the property.  See MSJ Response ¶ 7, at 3.  Rodriguez alleges that Allstate Insurance fails to account for this evidence when the Claim is reported in January, 2019.  See MSJ Response ¶ 7, at 3.  After Rodriguez presents this evidence to Allstate Insurance, Allstate Insurance provides a First Revised Claim Estimate (dated June 15, 2022), a Second Revised Claim Estimate (dated August 13, 2022), and a Third Revised Claim Estimate (dated March 29, 2023).  See MSJ Response ¶ 8, at 3-4.  The First Revised Estimate raises the coverage payout to $3,850.70, and provides $202.46 for HVAC repair.  See MSJ Response ¶ 9, at4; Allstate Insurance's First Revised Claim Estimate at 5, 7.  Rodriguez objects to the First Revised Claim Estimate, because he receives an opinion from Antonio's Plumbing, who concludes that, upon inspection, the damages are too severe to the HVAC, and that it cannot be returned to pre-damaged conditions and must be replaced.  See MSJ Response ¶ 10, at 4; Email from Allstar Public Adjusters to Rodriguez Re: Refrigerated Air Inspection (dated July 20, 2022), at 1.  Allstate Insurance then retains HVACi to separately assess the damages to the HVAC roof unit, who

confirm that the unit requires replacement as a result of hail damage.  See MSJ Response ¶ 11, at 4; HVACi First Assessment Report at 3.  Allstate Insurance then issues its Second Revised Estimate, dated August 13, 2022, which increases the amount provided for HVAC from $202.46 to $13,503.71.  See MSJ Response ¶ 12, at 4; Allstate Insurance's Second Revised Claim Estimate at 5.  Rodriguez alleges, however, that Allstate Insurance refuses to provide coverage for the HVAC unit that is on the ground, because Allstate Insurance maintains that the unit is not on the Property at the time of the subject loss.  See MSJ Response ¶ 13, at 4-5.  Rodriguez alleges that it is not until February, 2023, when Allstate Insurance acknowledges that the HVAC ground unit is on the Property at the time of the subject hail storm.  See MSJ Response ¶ 14, at 5.  Allstate Insurance then retains HVACi to inspect the damages to the HVAC ground unit, who concludes that the hail related damage to the unit mandates replacement of the unit.  See MSJ Response ¶ 14, at 5; HVACi Second Assessment Report at 3.  Subsequently, on March 29, 2023, Allstate Insurance provides Rodriguez with its Third Revised Estimate, which reflects an additional $15,641.22 to replace the ground HVAC unit.  See MSJ Response ¶ 15, at 5; Allstate Insurance's Third Revised Claim Estimate at 3.  Allstate Insurance continues to refuse, however, any coverage to Rodriguez for hail damage to the Property's roof, which Rodriguez alleges is in excess of $120,000.00.  See MSJ Response ¶ 17, at 5.

The Policy under which Rodriguez sues contains a time-to-sue provision that states that a lawsuit cannot be brought against Allstate Insurance unless "the action is commenced within one year after the inception of loss or damage."  Policy at 20.  See MSJ ¶ 5, at 2-3.  The damage to the Property occurs in 2018.  See MSJ ¶1, at 1; MSJ Response ¶ 2, at 2.  Rodriguez files his suit related to the damages on his Property on September 15, 2023.  See MSJ Response ¶ 18, at 5; Complaint at 1.

**PROCEDURAL BACKGROUND**

Rodriguez files his Complaint in the County of Sandoval, Thirteenth Judicial District Court, State of New Mexico, alleging breach of contract, violation of the New Mexico Unfair Claim Practices Act, and Bad Faith, on September 15, 2023. See John J. Rodriguez v. Allstate Property and Casualty Insurance Company, No. D-1329-CV-2023-01414, Plaintiff's Complaint for Breach of Insurance Contract, Violation of the New Mexico Unfair Claim Practices Act, and Bad Faith Actions, at 8, 9, 11, filed November 17, 2023 (Doc. 1)("Complaint"). Allstate Insurance then removes the case to federal court. See Notice of Removal, filed November 17, 2023 (Doc. 1). The case is currently before the Court on Allstate Insurance's MSJ and Motion to Bifurcate, and Rodriguez' Motion to Certify. The Court reviews briefly below the parties' briefings that relate to the MSJ, the Motion to Bifurcate, and the Motion to Certify. Finally, the Court summarizes the hearing on all three motions.

    1.    **The MSJ.**

In the MSJ, Allstate Insurance notes that the Policy between Rodriguez and Allstate Insurance contains a time-to-sue provision, which requires that "any action brought against Allstate which is in any way related to the existence or amount coverage, or the amount of loss for which coverage is sought must be commenced within one year after the inception of loss or damage." MSJ at 1 (emphasis in original). Allstate Insurance argues that these time-to-sue provisions are enforceable under New Mexico law, the provision bars Rodriguez's breach-of-contract claim against Allstate Insurance, and the Court should dismiss this claim. See MSJ at 1, 3-4.

In response, Rodriguez presents several arguments why the Policy provisions do not time-bar his breach-of-contract claim. See MSJ Response at 2. First, Rodriguez argues that the Court should apply the New Mexico State law requirement that Allstate Insurance "must show it was

substantially prejudiced by the alleged breach of the provision before it will be relieved of its obligations under the Policy." MSJ Response at 8. Rodriguez acknowledges that the current law in the State of New Mexico, set forth in Sanchez v. Kemper Insurance Co., 1981-NMSC-032, 96 N.M. 466, 632 P.2d 343 ("Sanchez"), is that "the affirmative defense of a violation of a time-to-sue provision may be asserted by an insurer without the insurer having to show prejudice." MSJ Response at 8. Rodriguez argues, however, that the Court "should hold that if presented with the issue today the New Mexico Supreme Court would overrule Sanchez on this point." MSJ Response at 8-9. Rodriguez next argues that, even if the Court does not determine that Allstate Insurance needs to show substantial prejudice to invoke the time-to-sue provision, the Court should conclude that a time-to-sue provision which "is not triggered by the actual accrual of the cause of action . . . should be held unreasonable and unenforceable as a matter of law." MSJ Response at 17. In so arguing, Rodriguez points to Whelan v. State Farm Mut. Auto Ins. Co., 2014-NMSC-021, 329 P.3d 646 ("Whelan"), which held that "exclusionary provisions 'based solely on the date of the accident without consideration of the actual accrual of the right to make a UM/UIM claim [are] unreasonable and unenforceable as a matter of law.'" MSJ Response at 17-18 (quoting Whelan, 2014-NMSC-021, ¶ 3, 329 P.3d 646, 648)(emphasis in MSJ Response but not in Whelan). Rodriguez acknowledges that the Court previously concludes, in Raja v. Ohio Security Insurance Company, 305 F. Supp. 3d 1206, 1247 n. 16 (D.N.M. 2018)(Browning, J.)("Raja"), that the Supreme Court of New Mexico would not extend the Whelan holding to time-to-sue provisions in commercial real property insurance policies. See MSJ Response at 17 n. 7. Rodriguez asks the Court to reconsider this conclusion or, in the alternative, to certify to the Supreme Court of New Mexico the legal question whether Whelan's holding applies to real property insurance policies. See MSJ Response at 17 n. 7. Next, Rodriguez argues that the time-to-sue provision is unenforceable because of

Allstate Insurance's material breach of the Policy.  See MSJ Response at 21.  Finally, Rodriguez argues that the Court should conclude that Allstate Insurance waives and/or is estopped from asserting the time-to-sue provision as a defense in this case, because of Allstate Insurance's conduct which lulls Rodriguez into reasonably believing that his claim would be settled without suit.  See MSJ Response at 23.

In reply, Allstate Insurance argues that the substantial prejudice requirement should not apply, because of the holding in Sanchez which "held that an insurer need not prove prejudice as a consequence of the insured's non-compliance with a time-to-sue provision," and because it cannot be "fairly concluded" that the Supreme Court of New Mexico will overrule Sanchez if the issue is presented to the Supreme Court of New Mexico today.  MSJ Reply at 1-2.  Allstate Insurance next argues that Whelan should not apply to hold that the time to sue provision is unreasonable and unenforceable, first because the "present motion only relates to Plaintiff's contractual claims and does not address Plaintiff's extracontractual claims," and based on the Court's previous conclusion in Raja that the Supreme Court of New Mexico would not extend Whelan to "cases not involving uninsured motorists' coverage."  MSJ Reply at 3-4.  Allstate Insurance then summarizes Rodriguez' third argument, which is that Allstate Insurance materially breaches the Policy by failing to pay Rodriguez the full amount of his claim, and that this breach of contract thereby renders the time-to-sue provision unenforceable.  See MSJ Reply at 4.  Allstate Insurance characterizes Rodriguez' argument as "a time-to-sue provision will never apply if an insured is ultimately determined to have a valid claim," and states that this is a novel theory for which Rodriguez cites no authority.  MSJ Reply at 4.  Finally, Allstate Insurance responds to Rodriguez' estoppel argument by arguing that Rodriguez presents "no evidence to support a claim of estoppel."  MSJ Reply at 5.

2.      **The Motion to Bifurcate.**

In the Motion to Bifurcate, Allstate Insurance argues that Rodriguez' right to recover on his extra-contractual claims, Unfair Insurance Claims Practices and Bad Faith, is "predicated on his contractual rights to benefits under the Policy."  Motion to Bifurcate at 2.  Allstate Insurance contends that, because Rodriguez' contractual rights under the Policy are in dispute, and the contractual claim is a necessary pre-requisite to the extra-contractual claims, the Court should bifurcate the extra-contractual claims, because those claims might "never become ripe." Motion to Bifurcate at 2-3.  In addition, Allstate Insurance argues that the Court should stay discovery on these extra-contractual claims in the interest of judicial economy, "until such time as [Rodriguez'] extra-contractual claims ripen."  Motion to Bifurcate at 2.

In response, Rodriguez notes that the District of New Mexico has rejected numerous times Allstate Insurance's contention that resolution of a breach-of-contract claim is "a necessary prerequisite to the determination of whether or not [Allstate Insurance] acted in bad faith when handling Mr. Rodriguez's insurance claim."  Plaintiff's Response in Opposition to Defendant's Motion to Bifurcate, at 1, filed May 21, 2025 (Doc. 41)("Response to Motion to Bifurcate").  Rodriguez maintains that New Mexico law is well-established that, regardless of the outcome of Rodriguez' contractual claim,  Rodriguez has the right to pursue his extra-contractual claims, and that therefore Allstate Insurance's "insistence on doubling the trials and discovery is not only legally unsupported, but [] will also serve to waste time, resources, and fails to promote judicial economy."  Response to Motion to Bifurcate at 2.  Rodriguez also argues that his breach-of-contract and extra-contractual claims are "inextricably linked such that bifurcation would be inappropriate," and that the same discovery -- the internal claim file -- is "clearly relevant" to both Rodriguez' breach of contract claim and extra-contractual claims.  Response to Motion to Bifurcate at 7-8.

In reply, Allstate Insurance first mentions that it is currently unresolved whether the time-

to-sue provision bars Rodriguez' breach-of-contract claim, and that it therefore makes sense not to subject the parties or the Court "to the time and expense of conducing discovery and otherwise litigating extracontractual claims until that issue has been decided."  Defendant's Reply in Support of Motion to Bifurcate, at 2, filed May 29, 2025 (Doc. 45)("Reply to Motion to Bifurcate").  Allstate Insurance also argues that different witnesses and exhibits are relevant for the breach-of-contract claim in comparison to the extra-contractual claims, and that the amount which Allstate Insurance owes in contractual damages to Rodriguez is an "important factor" in evaluating Rodriguez' extra-contractual claims.  Reply to Motion to Bifurcate at 3.  Finally, Allstate Insurance contends that bifurcation will prevent prejudice to Allstate Insurance, because Rodriguez' extracontractual claims "will likely involve evidence of the timing and amount of Allstate's offers to settle Plaintiff's contractual                     claims,"                     and                     therefore a conflict will arise "between the Plaintiff's right to introduce evidence of Allstate's offers in connection with the extracontractual claims, and Allstate's right to exclude such evidence when defending the breach of contract claim."  Reply to Motion to Bifurcate at 2.

   3.    **The Motion to Certify.**

   In the Motion to Certify, Rodriguez asks the Court to certify two questions of State law to the Supreme Court of New Mexico: (i) does the principle that an insurer must demonstrate substantial prejudice as a result of a material breach of the insurance policy by the insured before it will be relieved of its obligations under a policy apply when an insurance carrier asserts a time-to-sue provision of an insurance policy as an affirmative defense; and (ii) does the holding from Whelan -- that the accrual of the cause of action does not trigger a time-to-sue provision is unreasonable and unenforceable as a matter of law -- apply to a real property insurance policy? See Motion to Certify at 1.  In regards to the first question, Rodriguez asserts that there is a difference

of opinion in the District of New Mexico regarding whether the federal court should still apply Sanchez, which holds that an insurer does not need to show prejudice, pursuant to its Erie mandate as controlling law, despite an agreement within the District of New Mexico that, "given the opportunity, the New Mexico Supreme Court would likely overrule Sanchez." Motion to Certify at 4. Rodriguez contends that this confusion is prejudicial to parties who litigate in the District of New Mexico, because parties can receive a different ruling depending on which judge is assigned to the case. See Motion to Certify at 4. More important, Rodriguez argues, some judges can deny parties the right to pursue their contractual claims "based upon legal precedent that numerous judges within the New Mexico Federal District Court agree would likely be overruled if the issue was presented to the New Mexico Supreme Court today." Motion to Certify at 4. Rodriguez maintains that this issue cannot return to the Supreme Court of New Mexico, however, unless the Court certifies the issue to the Supreme Court of New Mexico, because "insurance carriers continue to remove such cases to the New Mexico Federal District Court pursuant to the Court's diversity jurisdiction." Motion to Certify at 4. As to the second question, whether the holding in Whelan extends to the real property insurance context, Rodriguez notes that the Court recognizes that it "is an open question whether a commercial property damage insurance policy's time-to-sue provision violates the public policy when it begins running when the damage happens." Motion to Certify at 5 (quoting Raja, 305 F. Supp. 3d at 1247 n. 16). Rodriguez argues that the reasoning in Whelan, which relies on a Court of Appeals of New Mexico case, Brooks v. State Farm Ins. Co, 2007-NMCA-033, 141 N.M. 322, 154 P.3d 697, characterizing it as "'fundamentally unfair' to time-bar an insured's claim where the 'insured may not be aware until sometime after the accident that a claim against her underinsured motorist insurer must be pursued,'" applies even more forcefully in a real property dispute. Motion to Certify at 6 (quoting Brooks v. State Farm Ins. Co, 2007-NMCA-

033, ¶ 16, 141 N.M. 322, 327 154 P.3d 697, 702).  Rodriguez argues this, because, unlike in a UM/UIM dispute where the claimant knows exactly when the accident occurs, an insured of real property "may not know he or she has storm related damage that is a covered loss under their insurance policy, like wind or hail damage, until months or even years after the storm occurs." Motion to Certify at 6-7.  Accordingly, Rodriguez asks the Court to certify to the Supreme Court of New Mexico whether Whelan's holding extends to the real property insurance context.  See Motion to Certify at 7.

In response, as to the first question, Allstate Insurance argues that a federal court should not certify a question to the Supreme Court of New Mexico unless it presents "a significant question of law with substantial public interest."  Defendant's Response to Plaintiff's Motion for Certification of Questions of Law to the Supreme Court, at 1, filed June 9, 2025 (Doc. 50)("Response to Motion to Certify").  Allstate Insurance argues that the first question that Rodriguez proposes does not present a significant question of law with substantial public interest, because the only cases pending before the District of New Mexico that "involve the issues raised are the present one and Sayamontry v. Allstate, No. CIV 23-1126 JB/DLM."  Response to Motion to Certify at 1-2.  Allstate Insurance also argues that certification should not occur when there are factual disputes regarding the question to be certified, and maintains that there is a factual dispute regarding the time-to-sue provision.  See Response to Motion to Certify at 2.  As to the second issue, Allstate Insurance argues that Rodriguez has not shown any "substantial disagreement or uncertainty within the New Mexico Federal District Court regarding the second issue presented."  Response to Motion to Certify at 2. Allstate maintains that the Court should deny Rodriguez' Motion to Certify on both questions.  See Response to Motion to Certify at 3.

In reply, Rodriguez argues that the first question he proposes involves issues of substantial

public interest, because "there is agreement within the New Mexico Federal District Court that the court believes, given the opportunity, the New Mexico Supreme Court would likely overrule Sanchez." Reply to Motion to Certify at 3. Rodriguez argues that the second question which he proposes also involves issues of substantial public interest, because Whelan indicates the possibility that allowing a time-to-sue provision in a real property insurance policy to be triggered by the date of the inception of the loss, instead of the actual accrual date for the cause of action, may violate New Mexico public policy and/or is fundamentally unfair. See Reply to Motion to Certify at 4. Further, Rodriguez asserts that he is "unaware of any legal authority that requires a question presented for certification must be at issue in a given number of other cases before the question can be deemed a matter of substantial public interest." Reply to Motion to Certify at 5. Next, Rodriguez reaffirms that there are no factual disputes at issue regarding the questions on which he seeks certification. See Reply to Motion to Certify at 5. Finally, Rodriguez notes that there is uncertainty whether the holding in Whelan applies to a real property insurance policy and states that the Supreme Court of New Mexico should resolve this uncertainty. See Reply to Motion to Certify at 6.

## LAW REGARDING DIVERSITY JURISDICTION AND ERIE

Under Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1983)("Erie"), a federal district court sitting in diversity applies "state law with the objective of obtaining the result that would be reached in state court." Butt v. Bank of Am., N.A., 477 F.3d 1171, 1179 (10th Cir. 2007). Accord Mem. Hosp. v. Healthcare Realty Trust Inc., 509 F.3d 1225, 1229 (10th Cir. 2007). The Court has held that if a district court exercising diversity jurisdiction cannot find a Supreme Court of New Mexico "opinion that [governs] a particular area of substantive law . . . [the district court] must . . . predict how the Supreme Court of New Mexico would [rule]." Guidance Endodontics, LLC v.

- 14 -

Dentsply Int'l., Inc., 708 F. Supp. 2d 1209, 1224-25 (D.N.M. 2010)(Browning, J.).  "Just as a court engaging in statutory interpretation must always begin with the statute's text, a court formulating an Erie prediction should look first to the words of the state supreme court." Peña v. Greffet, 110 F. Supp. 3d 1103, 1132 (D.N.M. 2015)(Browning, J.).[3]  If the Court finds only an opinion from the Court of Appeals of New Mexico, while "certainly [the Court] may and will consider the Court of Appeal[s'] decision in making its determination, the Court is not bound by the Court of Appeal[s'] decision in the same way that it would be bound by a Supreme Court decision." Mosley v. Titus, 762 F. Supp. 2d 1298, 1332 (D.N.M. 2010)(Browning, J.)(noting that, where the only opinion on point is "from the Court of Appeals, [] the Court's task, as a federal district court sitting in this district, is to predict what the Supreme Court of New Mexico would do if the case were presented to it")(citing Wade v. EMCASCO Ins. Co., 483 F.3d 657, 666 (10th Cir.

---

[3]In performing its Erie-mandated duty to predict what a state supreme court would do if faced with a case, see Comm'r v. Estate of Bosch, 387 U.S. 456 (1987), a federal court may sometimes contradict the state supreme court's own precedent if the federal court concludes that the state supreme court would, given the opportunity, overrule its earlier holding, see Anderson Living Trust v. WPX Energy Prod., LLC, 27 F. Supp. 3d at 1247 n.30.  Courts should, obviously, be reticent to formulate an Erie prediction that conflicts with state-court precedent; even if the prediction turns out to be correct, such predictions produce disparate results between cases filed in state and federal courts, as the old state supreme court precedent usually binds state trial courts. The factors to which a federal court should look before making an Erie prediction that a state supreme court will overrule its prior precedent vary depending upon the case, but some consistent ones include: (i) the age of the state supreme court decision from which the federal court is considering departing -- the younger the state case is, the less likely it is that departure is warranted; (ii) the amount of doctrinal reliance that the state courts -- especially the state supreme court -- have placed on the state decision from which the federal court is considering departing; (iii) apparent shifts away from the doctrine that the state decision articulates, especially if the state supreme court has explicitly called an older case's holding into question; (iv) changes in the composition of the state supreme court, especially if mostly dissenting justices from the earlier state decision remain on the court; and (v) the decision's patent illogic or its inapplicability to modern times.  See Peña v. Greffet, 110 F. Supp. 3d at 1132 n.17.  In short, a state supreme court case that a federal court Erie predicts will be overruled is likely to be very old, neglected by subsequent state-court cases -- perhaps because it is in a dusty corner of the common law which does not get much attention or have much application -- and clearly wrong.

2007)(explaining that, "[w]here no controlling state decision exists, the federal court must attempt

to predict what the state's highest court would do," and that, "[i]n doing so, it may seek guidance

from decisions rendered by lower courts in the relevant state")).[4]   The Court may also rely on

---

[4]The Supreme Court of the United States of America has addressed what the federal courts may use when there is not a decision on point from the state's highest court:

The highest state court is the final authority on state law, but it is still the duty of the federal courts, where the state law supplies the rule of decision, to ascertain and apply that law even though it has not been expounded by the highest court of the State.  An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question.  We have declared that principle in *West v. American Telephone and Telegraph Co.*, 311 U.S. 223 (1940), decided this day.  It is true that in that case an intermediate appellate court of the State had determined the immediate question as between the same parties in a prior suit, and the highest state court had refused to review the lower court's decision, but we set forth the broader principle as applicable to the decision of an intermediate court, in the absence of a decision by the highest court, whether the question is one of statute or common law.

. . . We have held that the decision of the Supreme Court upon the construction of a state statute should be followed in the absence of an expression of a countervailing view by the State's highest court, and we think that the decisions of the Court of Chancery [the New Jersey trial court] are entitled to like respect as announcing the law of the State.

. . . .

The question has practical aspects of great importance in the proper administration of justice in the federal courts.  It is inadmissible that there should be one rule of state law for litigants in the state courts and another rule for litigants who bring the same question before the federal courts owing to the circumstance of diversity of citizenship.  In the absence of any contrary showing, the rule [set forth by two New Jersey trial courts, but no appellate courts] appears to be the one which would be applied in litigation in the state court, and whether believed to be sound or unsound, it should have been followed by the Circuit Court of Appeals.

Fid. Union Trust Co. v. Field, 311 U.S. 169, 177-80 (1940)(footnotes and citations omitted).  The Supreme Court has softened this position over the years; federal courts are no longer bound by state trial or intermediate court opinions, but "should attribute [them] some weight . . . where the highest court of the State has not spoken on the point."  Comm'r v. Estate of Bosch, 387 U.S. at 465 (citing King v. Order of United Commercial Travelers, 333 U.S. 153, 159 (1948)).  See 17A

Tenth Circuit decisions interpreting New Mexico law.  See Anderson Living Trust v. WPX Energy

Prod., LLC, 27 F. Supp. 3d at 1243 & n.30.[5]  Ultimately, "the Court's task is to predict what the

_____

James Wm. Moore et al., Moore's Federal Practice § 124.20 (3d ed. 1999)("Moore's")("Decisions of intermediate state appellate courts usually must be followed . . . [and] federal courts should give some weight to state trial courts decisions.")(emphasis and title case omitted).

[5]In determining the proper weight to accord Tenth Circuit precedent interpreting New Mexico law, the Court must balance the need for uniformity between federal court and state court interpretations of state law with the need for uniformity among federal judges.  If the Court adheres too rigidly to Tenth Circuit case law, ignoring changes undergone by a state's law in the ensuing years, then parties litigating state-law claims will be subject to a different body of substantive law, depending on whether they litigate in state court or federal court.  This result frustrates the purpose of Erie, which held that federal courts must apply state court interpretations of state law, rather than their own, in part so that parties achieve a consistent result regardless of the forum.  This consideration pulls the Court toward according Tenth Circuit precedent less weight, and according state court decisions issued in the ensuing years more weight.  On the other hand, when the state law is unclear, it is desirable for there to at least be uniformity among federal judges as to its proper interpretation.  Otherwise, different federal judges within the same circuit -- or even the same district, as district courts' decisions are not binding, even upon themselves -- would be free to adopt differing interpretations of a state's law.  This consideration pulls the Court towards a stronger respect for vertical stare decisis, because a Tenth Circuit decision on point -- regardless whether it accurately reflects state law -- at least provides consistency at the federal level, so long as federal district judges are required to follow it.

The Court must decide how to weigh Tenth Circuit case law against more-recent state court decisions, choosing a point on the spectrum between the two extremes: rigidly adhering to Tenth Circuit precedent unless there is intervening case law directly on point from the state's highest court, on one end; and independently interpreting the state law, regarding the Tenth Circuit precedent as no more than persuasive authority, on the other.  In striking this balance, the Court notes that it is generally more concerned about systemic inconsistency between the federal courts and the state courts than it is about inconsistency among federal judges.  Judges, even those within a jurisdiction with ostensibly identical governing law, sometimes interpret and apply the law differently from one another; this inconsistency is part and parcel of a common-law judicial system.  More importantly, litigants seeking to use forum selection to gain a substantive legal advantage cannot easily manipulate such inconsistency: cases are assigned randomly to district judges in this and many federal districts; and, regardless, litigants cannot know for certain how a given judge will interpret the state law, even if they could determine the identity of the judge pre-filing or pre-removal.  All litigants know in advance is that whomever federal district judge they are assigned will look to the entirety of the state's common law in making his or her determination -- the same as a state judge would.  Systemic inconsistency between the federal courts and state courts, on the other hand, not only threatens the principles of federalism, but litigants may more easily manipulate the inconsistency.  When the Tenth Circuit issues an opinion interpreting state law, and the state courts subsequently shift away from that interpretation, litigants -- if the district courts strictly adhere to the Tenth Circuit opinion -- have a definite

- 17 -

substantive advantage in choosing the federal forum over the state forum, or vice versa.

The Court further notes that district courts may be in a better position than the Tenth Circuit to be responsive to changes in state law. Tenth Circuit decisions interpreting a particular state's law on a specific issue are further apart in time than the collective district courts' decisions are. More importantly, the Tenth Circuit does not typically address such issues with the frequency that the state's courts themselves do. As such, Tenth Circuit precedent can lag behind state law developments -- developments that the district courts may be nimble enough to perceive and adopt. Additionally, much of the benefit of having a consistent Tenth Circuit-wide interpretation of a particular state's law is wasted. Other than Oklahoma, every state encompassed by the Tenth Circuit contains only one federal judicial district, and there is relatively little need for federal judges in Wyoming and Kansas to have a uniform body of New Mexico law to which to look. Last, the Court notes, respectfully, that district courts may be in a better position than the Tenth Circuit to develop expertise on the state law of the state in which they sit. Every federal judicial district in the nation, except the District of Wyoming, covers at most one state. It is perhaps a more workable design for each district court to keep track of legal developments in the state law of its own state(s) than it is for the Tenth Circuit to monitor separate legal developments in eight states. The Tenth Circuit used to follow this rationale in applying a clearly erroneous standard of review to district judge decisions of state law with no controlling state Supreme Court precedent. See Weiss v. United States, 787 F.2d 518, 525 (10th Cir. 1986); See Rawson v. Sears, Roebuck, & Co., 822 F.2d 908, 923 (10th Cir. 1987)(McKay, J., dissenting)(collecting cases). Since the mid-1980s, however, the Tenth Circuit has abandoned that rationale and applied a de novo standard of review to district judge decisions applying state law with no governing state Supreme Court precedent. See Rawson v. Sears, Roebuck, & Co., 822 F.2d at 908. See also id. at 923 (McKay, J., dissenting)(noting that the majority had abandoned the "sanctified" clearly-erroneous standard or, the "so-called local-judge rule" in its analysis). The Court regrets the Tenth Circuit's retreat from the clearly erroneous standard.

Having outlined the relevant considerations, the Court thinks the proper stance on vertical stare decisis in the context of federal court interpretations of state law is as follows: the Tenth Circuit's cases are binding as to their precise holding -- what the state law was on the day the opinion was published -- but lack the positive precedential force that its cases interpreting a federal statute or the Constitution of the United States of America possess. A district court considering a state law issue after the publication of a Tenth Circuit opinion on point may not come to a contrary conclusion based only on state court cases available to and considered by the Tenth Circuit, but it may come to such a conclusion based on intervening state court cases.

When interpreting state law, the Tenth Circuit does not and cannot issue a case holding that $x$ is the law in New Mexico; it holds that the proper interpretation of New Mexico law, at the time the opinion is released, is $x$. Its holdings are descriptive, not prescriptive -- interpretive, not normative. Because federal judicial opinions lack independent substantive force on state law issues, but possess such force regarding federal law issues, the Court thinks the following is not an unfair summary of the judicial interpretive process: (i) when interpreting federal law, the federal appellate courts consider the existing body of law, and then issue a holding that both reflects and influences the body of law; that holding subsequently becomes a part of the body of law; but (ii) when interpreting state law, the federal appellate courts consider the existing body of law, and then issue a holding that only reflects the body of law; that holding does not subsequently become a part of the body of law. The federal district courts are bound to conclude that the Tenth Circuit's

reflection of the then-existing body of law was accurate. The question is whether they should build a doctrine atop the case and use the existence of the Tenth Circuit's case to avoid any responsibility to independently consider the whole body of state law that exists when the time comes that diversity litigants raise the issue in their courtrooms. Giving such effect to the Tenth Circuit's interpretations of state law is at tension with Erie, giving independent substantive effect to federal judicial decisions -- i.e., applying federal law -- in a case brought in diversity.

The purpose of Erie is well-known and simple, and the Court should not complicate it beyond recognition: it is that the same substantive law governs litigants' cases regardless whether they are brought in a federal or state forum. For simplicity's sake, most courts have settled on the formulation that "the federal court must attempt to predict how the states' highest court would rule if confronted with the issue." Moore's § 124.22[3] (citing Comm'r v. Estate of Bosch, 387 U.S. at 465 ("[A]n intermediate appellate state court [decision] is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.")(citation and internal quotation marks omitted). This may not be the most precise formulation if the goal is to ensure identical outcomes in state and federal court -- the Honorable Milton I. Shadur, United States District Judge, looks to state procedural rules to determine in which state appellate circuit the suit would have been filed were it not in federal court, and then applies the state law as that circuit court interprets it, see Abbott Laboratories v. Granite State Ins. Co., 573 F. Supp. 193, 196-200 (N.D. Ill. 1983)(noting that the approach of predicting the state supreme court's holdings will often lead to litigants obtaining a different result in federal court than they would in state court, where only the law of the circuit in which they filed -- and certainly not nonexistent, speculative state supreme court law -- governs) -- but it is a workable solution that has achieved consensus. See Allstate Ins. Co. v. Menards, Inc., 285 F.3d 630, 637 (7th Cir. 2002)("[W]e adhere today to the general rule, articulated and applied throughout the United States, that, in determining the content of state law, the federal courts must assume the perspective of the highest court in that state and attempt to ascertain the governing substantive law on the point in question."). This formulation, built out of ease-of-use, does not relieve courts of their Supreme Court-mandated obligation to consider state appellate and trial court decisions. To the contrary, even non-judicial writings by influential authors, statements by state supreme court justices, the closeness of the vote on a prior case addressing the issue, and personnel changes on the court -- considerations that would never inform a federal court's analysis of federal law -- may validly come into play. The question is whether the district courts must abdicate, across-the-board, the "would decide" aspect of the Erie analysis to their parent appellate courts when the Court of Appeals has declared an interpretation of state law.

The Erie doctrine results in federal cases that interpret state law withering with time. While cases interpreting federal law become more powerful over time -- forming the groundwork for doctrines, growing upward from one application (Congress may create a national bank) to many (Congress may set quotas on wheat-growing for personal consumption), expanding outward from the general (states must grant criminal jury trials) to the specific (the jury need not be twelve people, nor must it be unanimous) -- federal cases interpreting state law often become stale. New state court cases -- even when not directly rebuking the federal court's statement of law -- alter the common-law legal landscape with their dicta, their insinuations, and their tone. The Supreme Court, which picks its cases sparingly and for maximum effect, almost never grants certiorari to resolve issues of state law.

The Court's views on Erie, of course, mean little if the Tenth Circuit does not agree. In Wankier v. Crown Equipment Corp., the Tenth Circuit said that,

> [w]here no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do. In performing this ventriloquial function, however, the federal court is bound by ordinary principles of *stare decisis*. Thus, when a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit, and on subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue.

Wankier v. Crown Equip. Corp., 353 F.3d 862, 866 (10th Cir. 2003)(McConnell, J.). From this passage, it seems clear the Tenth Circuit permits a district court to deviate from its view of state law only on the basis of a subsequent case "of the state's highest court." The American Heritage Dictionary of the English Language 1402 (William Morris ed., New College ed. 1976)(defining "unless" as "[e]xcept on the condition that; except under the circumstances that"). A more aggressive reading of the passage -- namely the requirement that the intervening case "resolv[e] the issue" -- might additionally compel the determination that any intervening case law must definitively and directly contradict the Tenth Circuit interpretation in order to be considered "intervening."

It is difficult to know whether Judge McConnell's limitation of "intervening decision" to cases from the highest state court was an oversight or intentional. Most of the Tenth Circuit's previous formulations of this rule have defined intervening decisions inclusively as all subsequent decisions of "that state's courts," a term which seems to include trial and intermediate appellate courts. Even Koch v. Koch Industries, Inc., 203 F.3d 1202, 1231 (10th Cir. 2000), the primary authority upon which Wankier v. Crown Equipment Corp. relies, uses the more inclusive definition. In fact, Wankier v. Crown Equipment Corp. quotes its relevant passage:

> In the absence of intervening Utah authority indicating that a plaintiff is not required to prove a safer, feasible alternative design, we are bound to follow the rule of *Allen* [*v. Minnstar, Inc.*, 8 F.3d 1470 (10th Cir. 1993), a Tenth Circuit case interpreting an issue of Utah law], as was the district court. "Following the doctrine of stare decisis, one panel of this court must follow a prior panel's interpretation of state law, absent a supervening declaration to the contrary by that state's courts or an intervening change in the state's law." Koch v. Koch Indus., Inc., 203 F.3d at 1231.

Wankier v. Crown Equip. Corp., 353 F.3d at 867.

Whether the decision to limit the intervening authority a district court can consider was intentional or not, the Tenth Circuit has picked it up and run with it. In Kokins v. Teleflex, Inc., the Tenth Circuit, quoting Wankier v. Crown Equipment Corp., refused to consider an opinion from the Court of Appeals of Colorado holding directly the opposite of an earlier Tenth Circuit interpretation of Colorado law. See Kokins v. Teleflex, Inc., 621 F.3d 1290, 1297 (10th Cir. 2010)(Holmes, J.)("[T]he Colorado Court of Appeals decided *Biosera*[*, Inc. v. Forma Scientific, Inc.*, 941 P.2d 284 (Colo. Ct. App. 1998)], so it is not an 'intervening decision of the state's *highest*

state supreme court would do."  Wade v. EMCASCO Ins. Co., 483 F.3d at 666.  Accord Mosley

v. Titus, 762 F. Supp. 2d at 1332 (citation omitted); Rimbert v. Eli Lilly & Co., 577 F. Supp. 2d

1174, 1188-89 (D.N.M. 2008)(Browning, J.)(quoting Wade v. EMCASCO Ins. Co., 483 F.3d at

665-66

**ANALYSIS**

The Court first considers the MSJ, and decides that there are questions of law in the case

which the Supreme Court of New Mexico should decide before the Court reaches a conclusion on

the MSJ.  Accordingly, the Court dismisses the MSJ without prejudice as not ripe for decision

pending certification to the Supreme Court of New Mexico.  Further, finding that the factors weigh

in favor of certifying these questions of law to the Supreme Court of New Mexico, the Court

certifies the questions of law to the Supreme Court of New Mexico.  Finally, the Court denies the

Motion to Bifurcate, because Rodriguez's extra-contractual claims are not predicated on his

contractual claim, and Rodriguez' contractual and extracontractual claims are sufficiently linked

such that ordering separate trials will not support the goals of convenience, expedition, or economy.

**I.    THE MSJ PRESENTS QUESTIONS OF LAW WHICH THE COURT DETERMINES MUST BE CERTIFIED TO THE SUPREME COURT OF NEW MEXICO BEFORE THE COURT DECIDES THE MSJ.**

In the MSJ, Allstate Insurance argues that the Court should dismiss Rodriguez' contractual

claims, because the insurance policy contains a time-to-sue provision which bars claims under the

---

*court*.'")(emphasis in original)(quoting Wankier v. Crown Equip. Corp., 353 F.3d at 866).
 The Tenth Circuit has set forth a stringent restriction on its district courts' ability to independently administer the Erie doctrine.  More importantly, the Tenth Circuit's view may be at tension with the above-quoted Supreme Court precedent, as well as its own prior case law. Moore's lists the Tenth Circuit as having been, at one time, a "court[ that] hold[s] that a prior federal appellate decision [interpreting state law] is persuasive." Moore's § 124.22[4] (citing State Farm Mut. Auto. Ins. Co. v. Travelers Indem. Co., 433 F.2d 311, 312 (10th Cir. 1970)).  Still, the Court is bound to abide by the Tenth Circuit's interpretation of Erie.

policy unless "the action is commenced within one year after the inception of loss or damage," and Rodriguez does not bring his claim within the required one year span. MSJ at 3. In New Mexico, current law provides that time-to-sue provisions in insurance policies which limit the time within which suit may be brought after damage occurs are valid and enforceable if the period is reasonable, and the insurance company is not required to show substantial prejudice from the alleged breach before the time-to-sue provision is enforced. See Sanchez v. Kemper Ins. Companies, 1981-NMSC-032, ¶ 12, 96 N.M. 466, 468, 632 P.2d 343, 345 ("Sanchez")("Where the insurer raises the affirmative defense of violation of a time-to-sue provision, it need not show that it was prejudiced by violation of the provision. It need only show the breach."). In Sanchez, the Supreme Court of New Mexico draws a distinction between a cooperation provision in an insurance contract -- which requires (i) a showing of lack of cooperation in some substantial and material respect; and (ii) a showing of substantial prejudice to the insurer as a result of the breach to be enforceable -- and a time-to-sue provision in an insurance contract, which does not require a showing of substantial prejudice to the insurer to be enforceable. See 1981-NMSC-032 ¶ 9, 12, 96 N.M. at 468, 632 P.2d at 345. Sanchez reasons that, because "the reason for [a cooperation clause] is fear of prejudice to the insurer, it is reasonable to require a showing of prejudice." 1981-NMSC-032, ¶ 10, 96 N.M. at 468, 632 P.2d at 345. Sanchez also reasons that "the policy considerations are different for a time-to-sue provision" and that "the purpose of a time-to-sue provision is not necessarily fear of prejudice to the insure[r]." 1981-NMSC-032, ¶ 11, 96 N.M. at 468, 632 P.2d at 345. Accordingly, Sanchez concludes that, "[w]here an insurer raises the affirmative defense of violation of a time-to-sue provision, it need not show that it was prejudiced by the violation of the provision. It need only show the breach." 1981-NMSC-032, ¶ 12, 96 N.M. at 468, 632 P.2d at 345.

The Supreme Court of New Mexico has not overruled Sanchez. It has, however, cast

significant doubt on Sanchez, stating in Roberts Oil Co., Inc. v. Transamerica Ins. Co., 1992-

NMSC-032 ¶ 29, 113 N.M. 745, 752, 833 P.2d 222, 230 ("Roberts Oil"):

> [W]hile we agree with the Sanchez approach of focusing on the purpose of
> the contractual provision at issue, we question the Court's analysis of the relevant
> considerations underlying the respective policy provisions. The present case does
> not involve a time-to-sue clause, so there is no occasion to overrule Sanchez; but, as
> indicated, we think its result and some of its rationale are questionable.

1992-NMSC-032 ¶ 29, 113 N.M. at 752, 833 P.2d at 230. In Roberts Oil, the Supreme Court of

New Mexico considers the enforcement of a voluntary payment clause, and determines that the

distinction between a cooperation provision, which requires a showing of substantial prejudice to

the insurer to be enforced, and a voluntary payment clause is a distinction without a difference. See

1992-NMSC-032, ¶ 25, 113 N.M. at 751, 833 P.2d at 228. Roberts Oil reaches that result by

"focusing on the purpose of the particular clause in question and inquiring whether that purpose

will be advanced by applying it to the dispute in a given case." 1992-NMSC-032, ¶ 27, 113 N.M.

at 752, 833 P.2d at 229.

> When enforcement does not serve the reasons for the provision's inclusion
> in the policy, the insured's reasonable expectation that coverage will not be
> arbitrarily denied must be given effect. In short, the authority of the provision is
> limited by the reality of the way insurance policies are bought and sold; the effect
> of the provision is limited by the reasonable expectations of the insured.
>
> We hold time limit on the commencement of suit clauses, notice of loss
> clauses, proof of loss clauses, and cooperation clauses should all be reviewed on the
> basis of whether their application in a particular case advances the purpose for which
> they were included in the policy. Only by so reviewing these clauses can courts
> satisfy the consumer's reasonable expectation that coverage will not be defeated on
> arbitrary procedural grounds.

1992-NMSC-032, ¶ 25, 113 N.M. at 751, 833 P.2d at 228 (quoting Estes v. Alaska Ins. Guar. Ass'n,

774 P.2d 1315, 1318 (Alaska 1989)). Roberts Oil quotes the Supreme Court of Connecticut's

similar reasoning: "In our judgment, a proper balance between the interests of the insurer and the

insured requires a factual inquiry into whether, in the circumstances of a particular case, an insurer

has been prejudiced . . . ." Roberts Oil, 1992-NMSC-032, ¶ 30, 113 N.M. at 753,  833 P.2d at 230 (quoting Aetna Casualty & Surety Co. v. Murphy, 206 Conn. 409, 538 A.2d 219, 223 (1988)). Roberts Oil determines that Sanchez takes the correct approach in focusing on the contractual provision's purpose, but "question[s] the Court's analysis of the relevant considerations underlying the respective policy provisions." Roberts Oil, 1992-NMSC-032, ¶ 29, 113 N.M. at 752, 833 P.2d at 229.

Under Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1983)("Erie"), a federal district court sitting in diversity applies "state law with the objective of obtaining the result that would be reached in state court." Butt v. Bank of Am., N.A., 477 F.3d 1171, 1179 (10th Cir. 2007).  If a district court exercising diversity jurisdiction cannot find a Supreme Court of New Mexico "opinion that [governs] a particular area of substantive law . . . [the district court] must . . . predict how the Supreme Court of New Mexico would [rule]." Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 708 F.Supp.2d 1209, 1224-25 (D.N.M. 2010)(Browning, J.).  Looking to Roberts Oil, the Court predicts that, given the chance, the Supreme Court of New Mexico will overrule Sanchez and hold that an insurer must demonstrate substantial prejudice from the insured's breach before a court will enforce a contractual time-to-sue provision.  The Court makes this prediction, because Roberts Oil approves of Sanchez' weighing of the contractual provision, the time-to-sue provision's, purpose, but disapproves of Sanchez' conclusion that the public policy considerations behind the time-to-sue provision do not support the imposition of a substantial prejudice requirement before the provision is enforced.  See Roberts Oil, 1992-NMSC-032, ¶ 29, 113 N.M. at 752, 833 P.2d at 229. If the Court enforces the time-to-sue in this case, Rodriguez will be effectively barred from bringing suit on his claims; the uncertainty about Rodriguez' chances to enforce his contractual rights if the MSJ is granted leads the Court to conclude that the Supreme Court of New Mexico would not

dismiss these claims unless Allstate Insurance suffers substantial prejudice. See Raja v. Ohio Sec. Ins. Co., 305 F. Supp. 3d 1206, 1248 (D.N.M. 2018)(Browning, J.)("Raja")(concluding the same); Durante v. Am. States Ins. Co., No. CV 99-1179 RLP/DJS, 2000 WL 36739969, at * 4 (D.N.M. Apr. 12, 2000)(Puglisi, J.)("Durante")(concluding that Roberts Oil overrules Sanchez by implication and that an insurer must show substantial prejudice before the court will enforce a time-to-sue provision).

Rodriguez secondarily argues that, even if the insurer does not need to show substantial prejudice, the Court should hold that a time-to-sue provision which is not triggered by the actual accrual of the cause of action is unreasonable and unenforceable as a matter of law. See MSJ at 17. In New Mexio, time-to-sue provisions are enforceable unless they violate public policy. See State ex rel. Udall v. Colonial Penn Ins. Co., 1991-NMSC-048, ¶ 6, 112 N.M. 123, 125, 812 P.2d 777, 779. The Supreme Court of New Mexico in Whelan, discussing uninsured/underinsured motorist ("UM/UIM") contracts, holds that exclusionary provisions "based solely on the date of the accident without consideration of the actual accrual of the right to make a UM/UIM claim [are] unreasonable and unenforceable as a matter of law." 2014-NMSC-021, ¶ 3, 329 P.3d at 648. Whelan states that it can "find no reasonable justification for a limitations period that may bar a claim before a lawful cause of action accrues. Our Legislature does not allow its own statutes of limitations to bar causes of action that have yet to accrue." 2014-NMSC-021, ¶ 15, 329 P.3d 646, 650. The Supreme Court of New Mexico concludes, therefore, that "a time-to-sue provision in a UM/UIM contract that is triggered solely by the date of the accident is unreasonable and unenforceable." 2014-NMSC-021, ¶ 19, 329 P.3d at 651. The Supreme Court of New Mexico focuses only on UM/UIM claims, and therefore it remains an open question whether this conclusion extends to a real property insurance policy such as the one at issue in this case.

- 25 -

The Court predicts that, were the Supreme Court of New Mexico to consider whether to extend Whelan to real property insurance policies, it would extend Whelan in this instance. Whelan features concern about the general reasonability of a time-to-sue provision that begins to run before a claim accrues, which the Court believes would counsel extension in this case. See 2014-NMSC-021, ¶ 15, 329 P.3d at 650. The Court decides a similar question in Raja and concludes that the Supreme Court of New Mexico will not extend Whelan's holding to a commercial real property insurance contract. In so doing, the Court identifies two significant differences between a UM/UIM-related insurance policy and an insurance policy covering commercial property damage. See Raja, 305 F.Supp.3d at 1247 n.16.

> First, a specific statutory regime -- the UM/UIM statute -- governs an automobile insurance policy, which demonstrates New Mexico's deliberate policy for protecting an insured from financial consequences from an accident with an uninsured or underinsured driver. Second, the UM/UIM statute's purpose is to protect individual drivers who may not be sophisticated insurance customers and may find themselves at the wrong end of a power disparity when purchasing an automobile insurance policy. Business owners who are in the market for insurance coverage for damage to commercial property are more likely to be on roughly equal footing with the insurer when negotiating a policy. In short, the reasons for voiding an unfavorable time-to-sue provision in a UM/UIM policy do not apply to a commercial property insurance contract . . . .

Raja, 305 F.Supp.3d at 1247 n. 16. The first difference -- the existence of a specific statutory regime for UM/UIM claims -- supports the conclusion that New Mexico specifically intends to protect an insured from uninsured or underinsured drivers and that the Supreme Court of New Mexico would not extend the cause of action accrual requirement to time-to-sue provisions for other insurance contracts, including the real property insurance contract at issue here. The second difference, however, does not apply here as it does in Raja; unlike in Raja, which deals with a commercial real property insurance contract, the insurance contract at issue here is between an individual and a large insurance company. Accordingly, the power disparity which exists in UM/UIM schemes for

individual drivers purchasing automobile insurance policies exists equally in this case where an individual purchases a real property insurance policy from a large insurance company.  This power disparity supports the extension of the cause of action accrual requirement to time-to-sue provisions in individual real property insurance contracts.  See Fireman's Fund Ins. Co. v. Sand Lake Lounge, Inc., 514 P.2d 223, 226-27 (Alaska 1973)(concluding that for a time-to-sue provision which begins running on the date of the inception of the loss for a real property insurance contract, the date of inception must be interpreted as the date on which the cause of action accrues, because "Respondents subscribed to a form policy.  We take judicial notice that the terms of such policies are not arrived at by bargaining between the parties.  Unquestionably respondent was in an inferior bargaining position"); Prudential-LMI Com. Ins. v. Superior Ct., 798 P.2d 1230, 1238 (1990), as modified (Dec. 13, 1990)(concluding that the "inception of loss" date for a time-to-sue provision in a real property insurance contract "should be determined by reference to reasonable discovery of the loss and not necessarily turn on the occurrence of the physical event causing the loss").  The Court concludes, therefore, that the fairness concerns present here make it likely that the Supreme Court of New Mexico will extend Whelan's holding to time-to-sue provisions in some non-UM/UIM insurance contracts, specifically a real property insurance contract such as the one at issue in this case.

Although the Court predicts the Supreme Court of New Mexico's actions, the Court concludes that it should certify to the Supreme Court of New Mexico both questions which Rodriguez presents in opposition to the MSJ: (i) whether an insurer must show substantial prejudice from the breach before a court may enforce an insurance policy's time-to-sue provision; and (ii) whether the holding in Whelan that exclusionary provisions based solely on the accident's date without consideration of the actual accrual of the right to make a UM/UIM claim are unreasonable

and unenforceable as a matter of law extends to some real property insurance policies.  Under the Uniform Certification of Questions of Law Act, the Supreme Court of New Mexico may, in its discretion, answer by formal written opinion questions of law that a court of the United States certifies to it if "the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision or statute of this state." N.M. STAT. ANN. § 39-7-4 (1978).  The Supreme Court of New Mexico also requires several other factors to be met before certification is appropriate: (i) there are no factual disputes regarding the certified questions; (ii) the question resolves the issue in the case out of which the question arose, and the resolution of the issue must materially advance the ultimate termination of the litigation; and (iii) the certification presents a significant question of law with substantial public interest.  See Schlieter v. Carlos, 1989-NMSC-037, ¶¶ 5, 15, 108 N.M. 507, 508, 511, 775 P.2d 709, 710, 713. The decision whether to certify a question to the State supreme court rests in the federal court's discretion.  See Kansas Judicial Review v. Stout, 519 F.3d 1107, 1120 (10th Cir. 2008).

As to both questions, the Court notes initially that there are no factual disputes regarding either question; the parties both agree on all relevant facts, disagreeing only on whether, as a matter of law, the Court can enforce the time-to-sue provision in the insurance policy.  Allstate Insurance argues that there is a factual dispute when the cause of action accrues, which defeats the certifiability of the second question regarding the applicability of Whelan.  See Response to Motion to Certify at 2.  The Court disagrees, however, that this is a factual dispute regarding the question of law for certifiability, because the question asks whether it is unreasonable in a non-UM/UIM context to allow a time-to-sue provision to begin running immediately when the damage beings.  The actual time of accrual does not bear upon this question.  The Court also notes that both questions resolve the issue presented in the case -- whether the time-to-sue provision is enforceable -- and both

questions advance the termination of the litigation, because if the Court can enforce the time-to-sue provision then the Court must dismiss Rodriguez' contractual claim, and if the Court cannot enforce the time-to-sue provision, then the claims must move forward to trial.

As to the first question, whether an insurer must show substantial prejudice from the breach before the Court will enforce the time-to-sue provision, the Court determines that it is unclear whether there is controlling appellate law on this issue. Within the District Court for the District of New Mexico, there is disagreement whether Sanchez remains good law. In Durante, the Honorable Richard Puglisi, United States Magistrate Judge for the United States District Court for the District of New Mexico, decides that Roberts Oil implicitly overrules Sanchez, and accordingly, that an insurer must show substantial prejudice before a court will enforce a time-to-sue provision. See 2000 WL 36739969, at * 4. By contrast, in Raja, the Court decides that Roberts Oil does not overrule Sanchez, but still enforces the substantial prejudice requirement on a time-to-sue provision after predicting that the Supreme Court of New Mexico would overrule Sanchez if given the chance. Raja, 305 F.Supp.3d at 1248. Finally, in Lucero v. Travelers Commercial Insurance Company, 647 F.Supp.3d 1115 (D.N.M. 2022), the Honorable Martha Vasquez, Senior United States District Judge for the United States District Court for the District of New Mexico, decides that Sanchez is still good law and refuses to apply the substantial prejudice requirement to a time-to-sue affirmative defense. See 647 F.Supp.3d at 1122-23. This disagreement, the Court concludes, contributes to this question's status as a significant question of law with substantial public interest. The uncertainty regarding the status of New Mexico law on this question is prejudicial to both insurance carriers and policy holders litigating in the District of New Mexico, because a ruling may differ based on which judicial officer has their case. Further, the Court concludes that it is unjust for the Court to deny New Mexico policyholders the right to pursue their contractual claims against

insurance carriers based upon legal precedent which the Court concludes the Supreme Court of New Mexico is likely to overrule if the issue is presented to the Supreme Court of New Mexico today. Accordingly, the Court determines that this question of law is one which is appropriate to certify and will certify the following question to the New Mexico Supreme Court: Does the following principle of law apply when an insurance carrier asserts an insurance policy's time-to-sue provision as an affirmative defense: An insurer must demonstrate substantial prejudice as a result of the insured's material breach of the insurance policy by the insured before the law relieves the insurer of its obligations under a policy.

As to the second question, whether Whelan's holding that exclusionary provisions which are based solely on the date of the accident without consideration of the actual accrual are unreasonable and unenforceable as a matter of law extends to real property insurance policies, the Court determines that it is currently an open question whether a real property damage insurance policy's time-to-sue provision violates public policy when it begins running as soon as the damage happens. The Supreme Court of New Mexico in Whelan is careful to cabin its holding narrowly to the UM/UIM context. 2014-NMSC-021, ¶ 19, 329 P.3d at 651. The Court determines that there are public policy reasons, however, which may support the extension of Whelan's holding to real property insurance policies, especially in a case such as the one before the Court, where the policy holder does not discover the true extent of the damages to the property until after the time-to-sue provision has passed, due in large part to the actions that the insurance company takes. See supra Factual Background at 2-4. Further, it is a question of substantial public interest whether these time-to-sue provisions, which begin running as soon as the damage occurs, are reasonable and enforceable in the real property insurance context, because these provisions often bar recovery entirely for individuals. Accordingly, the Court determines that this question of law is one which

is appropriate to certify and therefore will certify the following question to the Supreme Court of New Mexico pursuant to Rule 12-607 NMRA:  Does the following holding in Whelan apply to a real property insurance policy: A time-to-sue provision that the actual accrual of the cause of action does not trigger is unreasonable and unenforceable as a matter of law.[6]  In accordance with the

---

[6] The Court is concerned that, if it decides that Whelan is extended to residential home insurance policies and that Sanchez has been overruled, the Tenth Circuit may reverse the Court. On the other hand, the Court can determine that Whelan is limited to its facts and, because Sanchez is a Supreme Court of New Mexico decision, the federal courts are bound by it.  And because the federal court in New Mexico almost always has diversity jurisdiction between an insurance company and its insured, the federal courts -- and particularly the Tenth Circuit -- are making a lot of the insurance laws for New Mexico.  The Tenth Circuit has reversed the Court twice in recent years where the Court has tried faithfully to make an Erie prediction what the Supreme Court of New Mexico will do, but the Tenth Circuit has taken a more conservative approach that the Court thinks is inconsistent with what the Supreme Court of New Mexico would do.  See Chisholm's Vill. Plaza, LLC v. Travelers Com. Ins. Co., 621 F. Supp. 3d 1195, 1203 (D.N.M. 2022)(Browning, J.)(predicting that the Supreme Court of New Mexico would adopt an interpretive approach to pollution exclusions that is the most protective of the insured), rev'd sub nom. Chisholm's-Vill. Plaza LLC v. Cincinnati Ins. Co., No. 23-2133, 2025 WL 1178099, at * 9 (10th Cir. Apr. 23, 2025)(concluding that the District Court erred in its prediction, because the relevant policy provisions unambiguously denied coverage); Evanston Ins. Co. v. Desert State Life Mgmt., 434 F. Supp. 3d 1051, 1112 (D.N.M. 2020)(Browning, J.)(predicting that the Supreme Court of New Mexico would not interpret an exclusionary provision of an insurance policy to cover negligence claims), aff'd in part, rev'd in part and remanded, 56 F.4th 899, 908 (10th Cir. 2022)(concluding that the Court erred in its prediction, because the relevant insurance policy was unambiguous, and in New Mexico, "unambiguous contract provisions are applied, not interpreted").  The Court is concerned that the Tenth Circuit is making conservative predictions about New Mexico insurance law without any ability for the Supreme Court of New Mexico to ever offer any opinion unless the District Courts certify the case to the Supreme Court of New Mexico and the Supreme Court of New Mexico accepts the certification.  Unless the Supreme Court of New Mexico wants the Tenth Circuit, which appears to the Court more conservative on insurance issues than the Supreme Court of New Mexico, deciding all New Mexico insurance law with its diversity jurisdiction, the Supreme Court of New Mexico may want to consider taking these certifications on New Mexico insurance issues.  While the Court is fully aware that the Supreme Court of New Mexico does not want to encourage certifications, that taking them increases the Supreme Court of New Mexico's docket, and for these reasons this Judge has never certified an issue to the Supreme Court of New Mexico in his twenty-two years on the federal bench until this Opinion and Order, the Supreme Court of New Mexico may want to consider accepting certification in the discrete area of the State insurance law if it wants to maintain control over this area of law and not cede it to the federal courts.

Court's decision to certify these two questions of law to the Supreme Court of New Mexico, both of which affect the MSJ's outcome, which requires a determination of whether the Court may enforce the time-to-sue provision, the Court dismisses without prejudice the MSJ as not yet ripe for final decision.

**II.      THE COURT DOES NOT BIFURCATE RODRIGUEZ' EXTRA-CONTRACTUAL CLAIMS FROM RODRIGUEZ' CONTRACTUAL CLAIMS.**

Allstate Insurance argues that Rodriguez' predicates his extra-contractual claims -- unfair insurance claims practices and bad faith -- on his contractual rights to benefits under the Policy. See Motion to Bifurcate at 2.  Allstate Insurance further alleges that because Rodriguez' contractual rights are in dispute and that, therefore, the extra-contractual claims may never become ripe, the extra-contractual claims must be bifurcated from the contractual claims.  See Motion to Bifurcate at 2.  Allstate Insurance clarifies at the hearing on the motion that Allstate Insurance is requesting only a bifurcation of the trial and not of discovery.  See Transcript of Hearing at 55:1-9 (taken August 21, 2025)(Wilson).[7]

The decision whether to bifurcate a trial ordinarily rests in the trial court's sound discretion. See Angelo v. Armstrong World Indus., Inc., 11 F.3d 957, 964 (10th Cir. 1993).  Bifurcation is sanctioned by rule 42(b) of the Federal Rules of Civil Procedure "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy."  Fed. R. Civ. P. 42(b).  Bifurcation is often appropriate where some of the claims are secondary, and dependent on the successful prosecution of the primary claim.  See Aragon v. Allstate Ins. Co., 185 F. Supp. 3d 1281, 1286-87 (D.N.M. 2016)("Even if resolution of the UIM claim is not a formal

---

[7] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

condition precedent, bifurcation is appropriate because a decision in favor of Allstate on the UIM claim would render the bad faith claims moot. . . . Bifurcation is often granted on efficiency and judicial economy grounds when resolution of one claim may eliminate the need to adjudicate other claims."). The party seeking bifurcation has the burden of demonstrating that bifurcation is needed, however, "as a single trial normally lessens the expense and inconvenience of litigation." Ortiz v. Safeco Ins. Co. of Am., 207 F.Supp.3d 1216, 1217 (D.N.M. Sept. 13, 2016).

The Court first concludes that Allstate Insurance is incorrect in asserting that Rodriguez' extra-contractual claims are predicated on Rodriguez' contractual claims under the insurance policy. An insurer in New Mexico can act in bad faith in its handling of a claim "for reasons other than its refusal to pay" a claim in full. O'Neel v. USAA Ins. Co., 2002-NMCA-028, ¶ 7, 131 N.M. 630, 633, 41 P.3d 356, 359. A plaintiff may prove bad faith by showing that the insurance company acts unreasonably under the circumstances to conduct a timely and fair investigation or evaluation of the claim, or the insurer causes unreasonably delays in its notification to the policyholder that it pays or denies the claim, or it fails to timely investigate or evaluate or pay a claim. See NMRA, Civ. UJI 13-1702; Sloan v. State Farm Mut. Auto Ins. Co., 2004-NMSC-004, ¶ 3, 135 N.M. 106, 109, 85 P.3d 230, 234. Here, Rodriguez' extracontractual claims are based on more than its allegation that Allstate Insurance fails to pay its claim in full. As Rodriguez notes, he also claims that Allstate Insurance:

> 1. Misrepresent[s] to insureds pertinent facts or policy provisions relating to coverage at issue; 2. Fail[s] to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies; 3. Fail[s] to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies; 4. Fail[s] to affirm or deny coverage of claims of insureds within a reasonable time after proof of loss requirements under the policy have been completed and submitted by the insured; 5. [Does n]ot attempt[] in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear; 6. Compel[s] insureds to institute litigation to recover amounts

due under a policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds when such insureds have made claims for amounts reasonably similar to amounts ultimately recovered; and 7. Fail[s] to promptly provide an insured a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

Response to Motion to Bifurcate at 5-6. Accordingly, a determination that Allstate Insurance breaches the contract by underpaying the claim is not necessary before Rodriguez can show that Allstate Insurance acts in bad faith in the handling of Rodriguez' claim.

The only case which Allstate Insurance cites for its proposition that Rodriguez' extracontractual claims are dependent on the contractual claims, Charter Services, Inc. v. Principal Mut. Life Ins. Co., is inapplicable to the facts present here. See Motion to Bifurcate at 3 (citing 1994-NMCA-007, ¶ 17, 117 N.M. 82, 88, 868 P.2d 1307, 1313 ("Charter Services")). In Charter Services, the court considers a bad-faith claim grounded in the insurer's refusal to pay a claim even after the insurer learns that coverage has been misrepresented, where the insurer does not have a contractual obligation to pay at all under the policy. See 1994-NMCA-007, ¶ 17, 117 N.M. at 88, 868 P.2d at 1313. In this context, the New Mexico Court of Appeals states that "the concept of bad faith failure to pay in the insurance context does not arise unless there is a contractual duty to pay under the policy." 1994-NMCA-007, ¶ 17, 117 N.M. at 88, 868 P.2d at 1313. Charter Services stands for the proposition that there is no claim for bad faith if the insurer has no obligation at all to pay; it does not require that contractual claims be resolved first before extracontractual claims in a situation such as the one here, where Allstate Insurance is contractually obligated to pay out on at least some of Rodriguez' claims, and the question remains only how much. The Court concludes that Rodriguez' bad faith claims are not contingent on the contract claims, and, accordingly the extracontractual claims are currently ripe. Allstate Insurance has, therefore, failed to demonstrate that bifurcation is warranted for that reason.

Allstate Insurance also does not persuade the Court that bifurcation is more efficient, or necessary to prevent jury confusion or unfair prejudice to Allstate Insurance at trial. Bifurcation is not appropriate if the evidence to be presented on the various claims is inextricably linked. See FED. R. CIV. P. 42(b)(explaining that a court may order a separate trial of any claim or separate issue in furtherance of convenience or to avoid prejudice, or where separate trials will be conducive to expedition and economy). The Court determines that Rodriguez' contractual and extracontractual claims are sufficiently linked such that ordering separate trials will not support the goals of convenience, expedition, or economy. Rodriguez asserts that Allstate Insurance breaches the Policy by failing to pay a sufficient amount to address covered damages to his home in support of his contractual claims. See Response to Motion to Bifurcate at 8. Rodriguez also asserts that Allstate fails to conduct a timely and fair investigation of the loss, delays resolution of Rodriguez' claim, wrongfully denies payment for covered damages, wrongfully withholds depreciation, and fails to give adequate justification for the lack of parity between the estimates of independent third-party contractors and its own assessment of the loss in support of his extracontractual claims. See Response to Motion to Bifurcate at 8. Although Allstate argues that the issues are distinct -- "It is also the case that different witnesses and exhibits are required for the breach of contract claims and the bad faith claims" -- how Allstate Insurance determines the extent and value of the damages resulting from the storm is inextricably intertwined with its claims handling procedures and policies. Reply to Motion to Bifurcate at 2. As Rodriguez notes, "the same individuals will be involved in discovery for both the breach of contract and extracontractual claims . . . . The same body of facts and underlying evidence, including [Allstate's] claims file, are so inextricably intertwined as to support all of Mr. Rodriguez's causes of action." Response to Motion to Bifurcate at 8. The Court agrees with Rodriguez that there is enough potential overlap between witnesses and discovery for

the two claims, that to bifurcate the trial prolongs the course of this case, and results in minimal savings of effort and expense for counsel.  Finally, the Court does not believe that there is sufficient prejudice to Allstate Insurance to justify bifurcation.  The Court concludes that there is not a substantial risk of juror confusion or prejudice solely because the jury will consider admissible evidence regarding both the contract and bad-faith claims.  Jurors are often asked to comprehend complex issues in civil litigation; sufficiently clear jury instructions, including limiting instructions, and clear arguments by counsel enables jurors to understand the different sets of issues presented and, thereby, avoid any confusion or prejudice.  Accordingly, the Court declines to bifurcate the contractual claims from the extracontractual claims at trial.

**IT IS ORDERED** that: (i)  Defendant Allstate Property and Casualty Insurance Company's Motion for Partial Summary Judgment (Time-To-Sue), filed April 1, 2025 (Doc. 28) is dismissed without prejudice; (ii) Defendant Allstate Property and Casualty Insurance Company's Motion to Bifurcate Plaintiff's Claims for Violations of the New Mexico Unfair Claim Practices Act and Bad Faith Actions, filed April 1, 2025 (Doc. 29) is denied; (iii)  Plaintiff Rodriguez' Motion for Certification of Questions of Law to the New Mexico Supreme Court, filed May 28, 2025 (Doc. 43) is granted; and (iv) the Court certifies the following questions of law to the Supreme Court of New Mexico: (a) Does the following principle of law apply when an insurance carrier asserts an insurance policy's e time-to-sue provision as an affirmative defense: An insurer must demonstrate substantial prejudice as a result of the insured's material breach of the insurance policy before the law relieves the insurance company of its obligations under a policy; and (b) Does the following holding in Whelan v. State Farm Mut. Auto Ins. Co., 2014-NMSC-021, 329 P.3d 646, apply to a real property insurance policy: If the cause of action's accrual a time-to-sue provision, that time-to-sue provision is unreasonable and unenforceable as a matter of law.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Lawrence VandenBout
Taylor Meyers
VandenBout Law, PLLC
Denver, Colorado

     *Attorneys for the Plaintiff*

Kathy Black
Albuquerque, New Mexico

--and--

Floyd D. Wilson
Floyd D. Wilson, P.C.
Cedar Crest, New Mexico

--and--

John Stiff
Ed Snow
Stiff, Garcia & Associates, LLC
Albuquerque, New Mexico

     *Attorneys for the Defendant*